CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JAN 02 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16CV00042 |
| v. | ) ) ) | OPINION |
| MOUNTAIN MASONRY, INC., ET AL., | ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*Karen M. Barefield, Office of the Regional Solicitor, U. S. Department of Labor, Arlington, Virginia, for Plaintiff; John M. Lamie, Browning Lamie & Gifford, PC, Abingdon, Virginia, for Defendants Mountain Masonry, Inc., and Billy Cook, as President and Individually.*

In this Fair Labor Standards Act case, the defendants are in default and the court has received evidence as to the amount of a default judgment. The defendants have objected to the amount of back wages to be paid and to certain aspects of injunctive relief requested by the Secretary of Labor ("Secretary"). For the reasons set forth in this Opinion, I will sustain in part and overrule in part the defendants' objections.

I.

In accordance with Federal Rule of Civil Procedure 52(a), and based on my opportunity to assess the credibility of the witnesses, the following are my findings

of fact, based on the evidence presented at an evidentiary hearing held on the plaintiff's request for a default judgment.

Dawn Young, a Labor and Hour Investigator with the Department of Labor, visited the offices of defendant-employer Mountain Masonry, Inc. ("Mountain Masonry") in January 2016 to review payroll documents, time records, and other records of the business. A complaint from an employee to the Department of Labor prompted Young's investigation. Young had sent a letter to Mountain Masonry in advance of the meeting notifying Mountain Masonry of when she would be visiting and the reason for her visit, and listing documents she wished to review. She had also communicated with codefendant Billy Cook, the owner of Mountain Masonry, before her visit, and he had sent her some records to review.

During her visit, Young reviewed boxes of pay stubs. The pay stubs contained descriptions of work performed and listed deductions. She was also shown a separate box of pay stubs that contained no descriptive information regarding the purpose of the payments. Cook told Young that those pay stubs represented reimbursements for travel expenses or per diem payments. No deductions had been taken from those payments. Prior to reviewing the separate box of pay stubs, Young asked Cook why there were no overtime payments noted on the payroll documents. Cook replied that his employees did not work much overtime.

Employees told Young that Mountain Masonry had a practice of issuing two separate paychecks per pay period. The first check represented payment for 40 hours per week, with appropriate deductions withheld. The second check represented payment at the regular hourly rate for any hours worked in excess of 40 hours, plus three dollars per hour for each hour that the employee worked at a distant job site. Cook told Young that this additional three-dollars-per-hour payment was a "per diem" or travel bonus. Employees reported to Young that their hours worked had been tracked accurately by the foremen at their job sites.

Young's investigation revealed that 112 employees had been paid at their regular pay rate for hours worked in excess of 40 hours per week. These employees were not paid 150% of their regular wage for overtime hours as the law required. Young used the pay stubs provided by the defendants to calculate the amount of back wages the defendants owed to the workers as a result of the failure to pay a 50% premium on overtime hours. Per Department of Labor policy, she did not include back wages for employees who were owed less than $20. Young calculated that the defendants owed workers $98,198.11 in back wages incurred from October 28, 2013 through June 26, 2016.

At some point during the investigation, Young learned what the second set of paychecks represented and directed Cook to stop paying employees in the above-described fashion. Following that directive, Mountain Masonry continued

to issue two sets of paychecks, but the second set of paychecks no longer indicated what portion of the payment was for overtime hours and what portion was for the so-called per diem. Young used the hourly rates from the regular pay stubs to calculate the amounts from the second pay stubs that represented payment for hours worked in excess of 40 per week. By October 2016, Mountain Masonry had come into compliance with the law and was no longer issuing separate paychecks or paying workers their standard hourly rates for overtime hours.

Young did not deduct the per diem payment amounts from the amount of back wages owed because she concluded that the per diem payments were not intended as compensation for hours worked. Rather, based on representations by Cook and employees, the per diem payments were intended to cover incidental expenses incurred by employees due to the fact that they were working at sites far from home. Mountain Masonry paid for the workers' hotel accommodations while they were working at distant sites, but it did not pay for their meals.

Michael White, a former employee of Mountain Masonry, testified on behalf of the Secretary. White worked for Mountain Masonry for approximately a year in 2015. He was paid his normal hourly rate for all hours worked and was not paid a 50% premium on hours worked over 40 per week. He was paid with two separate paychecks, as described above. He had previously worked for Cook 10 to 12 years earlier, and Cook had not paid him an overtime premium at that time. The

defendants never paid White back wages for overtime hours he worked in 2015. He did receive a bonus of three dollars per hour when he was working at remote sites. He understood that this payment was intended to compensate him for travel expenses, like meals away from home. He did not receive the per diem amount when working at sites closer to home. White explained that he agreed to perform extra work at his normal hourly rate because he needed the money.

Cook testified that he did not force employees to work overtime but allowed them to decide how many hours they wanted to work. The employees understood that they would not receive a 50% premium on overtime hours. Cook testified that he treated overtime hours as independent contractor labor, even though he treated the same workers as employees for their regular 40 hours of work each week. When working at a remote job site, each worker received an additional four hours of pay to compensate for driving time, regardless of the actual time it took them to travel to and from the job site.

Cook no longer allows workers to work more than 40 hours per week. He has retained the services of an accounting firm to assist with the company's bookkeeping.

In addition to $98,198.11 in back wages, the Secretary also requests $98,198.11 in liquidated damages, plus interest. The defendants concede that Young correctly calculated the number of overtime hours worked and agree that

the Secretary is entitled to judgment. However, the defendants contend that they should receive a credit against the back wages owed for the so-called per diem payments made to workers. The Secretary also seeks the appointment of a receiver in the event that the defendants fail to pay the full amount of back wages, liquidated damages, and interest by a certain date. The defendants contend that the appointment of a receiver would be inappropriate because that remedy was not requested in the Complaint and is not supported by the evidence.

II.

When a party has failed to plead or otherwise assert a defense, and that fact has been documented, the clerk shall enter the party's default. Fed. R. Civ. P. 55(a). The party seeking the default must then apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Upon default, the well-pled allegations in the complaint are to be taken as true for purposes of establishing liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court may conduct a hearing to determine the amount of damages or to investigate other matters. Fed. R. Civ. P. 55(b)(2)(B), (D).

Here, not only did the defendants fail to answer the Complaint, they have also expressly conceded liability. Accordingly, entry of judgment by default against the defendants is wholly appropriate in this case.

The Complaint alleged facts showing, and the Secretary offered evidence establishing, that the defendants violated 29 U.S.C. § 207(a)(1) by failing to pay workers a rate of one and one-half times their regular pay rates for hours worked in excess of 40 per week. Therefore, the Fair Labor Standards Act ("FLSA") provides that the defendants must pay damages in the amount of "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Secretary is entitled to judgment in the amount of back pay, liquidated damages, and interest regardless of the defendants' ability to pay because "the employees became absolutely entitled to the money when they worked the overtime and were compensated for that time at unlawfully low wages." *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 58 (2d Cir. 1984) (noting that "[t]he employer's financial difficulty . . . does not outweigh the strong policies favoring award of interest on back pay" and that the proper way to avoid forcing a company out of business "is to formulate a manageable payment schedule"); *see also Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1302 (5th Cir. 1969); *Torres v. Am. R.R. Co. of Porto Rico*, 157 F.2d 255, 256 (1st Cir. 1946). Thus, the only issues before me at this time are whether the defendants are entitled to a credit for the three dollar per hour travel payments and whether the appointment of a receiver is proper.

An employee's regular rate of pay, from which his overtime rate is calculated, does not include "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). A regulation interpreting this provision of the FLSA provides that "[p]ayment by way of reimbursement for" certain "types of expenses will not be regarded as part of the employee's regular rate." 29 C.F.R. § 778.217(b). These excluded payments include reimbursements for "[t]he actual or reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home." 29 C.F.R. § 778.217(b)(3). "Supper money" is also excluded from the employee's regular pay and is defined as "a reasonable amount given to an employee, who ordinarily works the day shift and can ordinarily return home for supper, to cover the cost of supper when he is requested by his employer to continue work during the evening hours." 29 C.F.R. § 778.217(b)(4). Payments for "[t]he actual or reasonably approximate amount expended by an employee as temporary excess home-to-work travel expenses incurred . . . because the employee, on a particular occasion, is required to report for work at a place other than his regular workplace" are also excluded from an

employee's regular rate of pay. 29 C.F.R. § 778.217(b)(5). The regulation provides that these examples are "intended to be illustrative rather than exhaustive." 29 C.F.R. § 778.217(b). "[S]ums excluded from the regular rate . . . shall not be creditable toward . . . overtime compensation required . . . ." 29 U.S.C. § 207(h)(1).

In *Berry v. Excel Group, Inc.*, 288 F.3d 252, 254 (5th Cir. 2002), the court found that a $100 per week per diem payment "was a legitimate, reasonable reimbursement of travel expenses" and thus was excludable from the employee's regular rate of pay. *See also Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211, 1215 (10th Cir. 2016) (holding that a $35 per diem for food expenses while traveling was properly excluded from calculation of employees' regular rate of pay).

But in *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010), the court found that a $12.50 per hour payment classified as a "per diem" was in fact compensation for work performed and should have been included in the employee's hourly rate. The employee's stated regular rate in *Gagnon* was only $5.50 per hour, far below the average market rate for the kind of work he performed. *Id.* at 1039. The court stated that "when, as here, the amount of per diem varies with the amount of hours worked, the per diem payments are part of the regular rate in their entirety." *Id.* at 1041 (citing Department of Labor Field Operations Handbook). The court was concerned that the employer, by classifying

a portion of the employee's wages as a per diem, was simply perpetrating a scheme to avoid paying the required overtime premium. *Id.* at 1041-42. Because the so-called per diem was really a misclassified regular wage, the court held that the employer "did not pay Gagnon any additional sums that could be characterized as advanced or inappropriate amounts subject to an offset against the overtime owed to him." *Id.* at 1043.

In this case, the so-called per diem payments are something of a hybrid, possessing elements of both a true travel reimbursement and compensation for work performed. On the one hand, workers only received the payments during weeks when they were working at remote job sites. Three dollars per hour would add up to $36 per day for a 12-hour workday, which is a reasonable reimbursement for meals and other expenses incurred while traveling. Cook told Young that the payments represented travel expense reimbursements, and White understood that to be the purpose of the payments.

On the other hand, the payments were not calculated on a daily or weekly basis, but were expressly tied to the number of hours worked. This factor makes the payments look more like compensation to be included in the workers' regular hourly rate.

The defendants argue that the Secretary failed to prove that the per diem payments were true travel reimbursements, and the defendants contend that they

are thus entitled to offset those payments against the back wages they owe. But treating the so-called per diem payments as compensation rather than travel reimbursements would not entitle the defendants to a credit. It is clear that the per diem payments were not intended to function as overtime compensation because the workers received an extra three dollars per hour for every hour worked at a remote job site rather than just for hours worked in excess of 40 per week. Therefore, treating the travel payments as compensation would render them part of the workers' regular rate, which would increase the amount of overtime payments owed. Fortunately for the defendants, the Secretary has not requested such a finding. Based upon all of the evidence, I conclude that the three dollar per hour payments were a reasonable approximation of meal and other travel expenses incurred by employees while working at distant job sites, and the defendants are not entitled to a credit for them.

The defendants also object to the Secretary's request that the court appoint of a receiver of the business if the defendants fail to pay the monetary judgment within 30 days. I agree that appointment of a receiver is not warranted, at least at this time.

The appointment of a receiver is an extraordinary remedy that poses serious consequences to a defendant. *Solis v. Matheson*, 563 F.3d 425, 437 (9th Cir. 2009). "Receiverships are usually imposed for a judgment creditor only after a

party has had an execution issued and returned unsatisfied." *Id.* at 438. It is improper for a court to grant a receivership without first giving the defendant notice and an opportunity to present evidence on certain relevant equitable factors. *See id.* at 437-38.

In this case, the Secretary did not request appointment of a receiver in the Complaint, and neither party presented any evidence of the defendants' insolvency or inability to pay any judgment entered. As the Secretary concedes, execution of the judgment is not currently before the court. I find that the Complaint did not give the defendants appropriate notice that a receivership was contemplated, the evidence presented does not support appointment of a receiver, and the appointment of a receiver prior to attempted execution of judgment would be premature.

### III.

For the foregoing reasons, the defendants' objections, ECF No. 32, are OVERRULED IN PART and SUSTAINED IN PART. A separate final judgment will be entered herewith.

ENTER: January 2, 2018

/s/ *James P. Jones*
United States District Judge